**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **VIRTUAL CREATIVE ARTISTS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**HYATT HOTELS CORPORATION,**<br><br>Defendant. | C.A. No. 2:25-cv-00385<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virtual Creative Artists, LLC files this Original Complaint for Patent Infringement against Hyatt Hotels Corporation and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Virtual Creative Artists, LLC ("VCA" or "Plaintiff") is a Delaware limited liability company, having business address at 338 Gracious Way, Henderson, NV  89011.

2.      On information and belief, Defendant Hyatt Hotels Corporation ("Hyatt" or "Defendant") is a corporation organized and existing under the laws of Delaware. Defendant has a place of business at 333 Central Expy N, Allen, TX 75013. Defendant has a registered agent at United States Corporation Co, 211 E. 7th Street, Suite 620, Austin TX 78701.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein at 333 Central Expy N, Allen, TX 75013.

     5.     Without limitation, on information and belief, within this state, Defendant used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and this District.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

     6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has businesses in this district at 333 Central Expy N, Allen, TX 75013.  On information and belief, from and within this District Defendant committed at least a portion of the infringements at issue in this case.

     7.      For these reasons, personal jurisdiction exists and venue is proper in this District under 28 U.S.C. § 1400(b).

### III.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,501,480)

     8.     Plaintiff incorporates the above paragraphs herein by reference.

     9.     On November 22, 2016, United States Patent No. 9,501,480 ("the '480 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '480 Patent is

titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."
A true and correct copy of the '480 Patent is attached hereto as Exhibit A and incorporated herein
by reference.

10.     VCA is the assignee of all right, title, and interest in the '480 Patent, including all
rights to enforce and prosecute actions for infringement and to collect damages for all relevant
times against infringers of the '480 Patent.  Accordingly, VCA possesses the exclusive right and
standing to prosecute the present action for infringement of the '480 Patent by Defendant.

11.     The invention relates to the field of creating and distributing media content, in
particular, creating media content based upon submissions received on an electronic media
exchange. At the time of the original invention in 1998, there was an Internet-centric problem that
required a technical solution—how to develop a computer system that would allow remote
contributors of electronic content to share and collaborate their content to develop new media
content. The claimed invention, which predates modern crowdsourcing solutions, offers a unique,
unconventional, and specially configured combination of "subsystems" in which to address the
Internet-centric problem.

12.     As set forth in the claims, the claimed invention has a collection of unconventional
and particularly configured subsystems, including:

- "an electronic media submissions server subsystem,"

- "an electronic multimedia creator server subsystem,"

- "an electronic release subsystem,"

- "an electronic voting subsystem," and

- their corresponding specialized databases.

13.     Each of these subsystems are configured in a very specific (and not generic),
unconventional and non-routine manner to offer the novel and non-obvious claimed invention.

For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased required in the claim.  In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

14.    As another example, the claim requires a specifically configured "electronic media submission server subsystem."  This subsystem is defined as specifically having:

- "one or more data processing apparatus,"

- "an electronic media submission database stored on a non-transitory medium," and

- "a submissions electronic interface."

The "submissions electronic interface" is further specifically "configured" [1] "to receive electronic media submissions from a plurality of submitters over a public network, and [2] store the electronic media submissions in the electronic media submission database."  Further, "the electronic media submissions database" in this subsystem is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission."  Collectively, the level of detail included in this very particular, well-defined, and unconventional subsystem makes clear that the claims include substantially more than the alleged abstract idea or merely performing an alleged abstract idea on a computer.

15.    Similarly, the claim also requires a separate specifically configured "an electronic multimedia creator server subsystem."  The claim specifically defines how this second subsystem

interacts with other components including being "operatively coupled to the electronic media submissions server subsystem."  The claim also specifically defines this subsystem as "having":

- "one or more data processing apparatus" and

- "an electronic creator multimedia database stored on a non-transitory medium."

16.    This subsystem is also specifically "configured [1] to select and [2] retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server."  The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes to develop multimedia content to be electronically available for viewing on user devices."  Even more detail is provided by requiring "the identification of the submitter [be] maintained with each selected and retrieved submission within the multimedia content."  Here again, collectively, the level of detail included in this very particular and well-defined and unconventional subsystem makes clear that the claims include substantially more than an alleged abstract idea or merely performing an alleged abstract idea on a computer.

17.    The claim also includes "an electronic release subsystem," which is well defined and not conventional or routine.  The claim defines how this subsystem is "operatively coupled to the electronic multimedia creator server subsystem."  The claim also defines the components of this subsystem as having "one or more data processing apparatus" and being particularly "configured to make the multimedia content electronically available for viewing on one of more user devices."  These details, collectively, also make this very particular and well-defined and unconventional subsystem substantially more than an abstract idea or performing an abstract idea on a computer.

18.    The claim also requires "an electronic voting subsystem," which is well-defined, specific, and unconventional.  This claimed subsystem has "one or more data processing apparatus" and is specifically "configured to enable a user to electronic vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content."

19.    Claim 1 is a specific and discrete implementation.  For example, the claim requires an "electronic content filter" located at the server, remote from end users, and customizable based on user attributes.  As another example, the "electronic voting subsystem" at the time of the invention was novel and inventive and added sufficient inventive contributions to avoid a risk of preempting creating and distributing media content.   It is possible to create and distribute media content without ever having to include a "voting" subsystem on what components should be included in such media content.  The detailed configuration "to enable a user to vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content" has the level of particularity that avoids any risk of preemption.

20.    Furthermore, the very particular and specifically configured "electronic media creator subsystem" not only provides a detailed and unique physical structure and interrelationship with other claimed components, but also includes a very specific configuration that is not conventional or routine.  The claims make clear the interrelationship of the "electronic multimedia creator server subsystem" with respect to "the electronic media submission server subsystem" which must be "operatively coupled" thereto.  The claims also provide detail on how the "electronic media creator subsystem" is "configured" "to select and retrieve a plurality of electronic media submissions from the electronic media submission database using an electronic

filter." They also provide detail on how the "electronic filter" is "based at least in part on at least one of the one or more user attributes" and specifies that "the identification of the submitter is maintained with each selected and retrieved submission within the multimedia content."

21.    These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '480 patent before the United States Patents and Trademark Office.

22.    **Direct Infringement.** Upon information and belief, Defendant directly infringed claim 1, 2, 4, and 15 of the '480 Patent in Texas, and elsewhere in the United States, through making, using, and offering for use its computer-based system that operated certain features at https://www.hyatt.com/ ("Accused Instrumentality").

23.    Hyatt made, used, and offered for use a computer-based system for its Accused Instrumentality, to enable Host Brands (Submitters) to share multimedia content pertaining to Hotel Listings. The Hotel Listings included multimedia content including image and textual content (*e.g.,* a Hotel Name, Hotel Description and images of the Hotel offered) which were shown to other users based on, *inter alia*, user attributes. The system of the Accused Instrumentality during the relevant time period had multiple cloud server providers for the Accused Instrumentality as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. The system of the Accused Instrumentality during the relevant time period had numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.,*   https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).



(*E.g.*,    https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).



(*E.g.*, https://w3techs.com/sites/info/Hyatt.com).

24.    The Accused Instrumentality included an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of Hosts (submitters), for example content pertaining to their respective electronic media submission (*e.g.*, Hotel Listing) on the Accused Instrumentality, as well as multimedia content to be displayed on one or both of the user's profile and the Hotel Listing, as discussed and shown for example in connection with the above discussion. The submissions pertaining to building a Brand profile and to posting a Hotel Listing included, *e.g.,* photo and/or textual content. On information and belief, the submissions were provided to the Accused Instrumentality via a

submissions electronic interface, *e.g.*, a content portal, accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.*, Hosts/users) over a public network (*e.g.*, the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.

25.    The electronic media submissions database of the Accused Instrumentality, which stored the submissions, further stored data identifying the submitter and data indicating content for each electronic media submission (*e.g.*, Hotel Listing). As shown below, data identifying the user (submitter) included, *e.g.*, a name. Data indicating content for each electronic media submission included photo and/or textual content pertaining to the Hotel Listing.



(*E.g.*,  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).




(*E.g.*,    https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

26.    The Accused Instrumentality allowed individual Host-users to sign up and create Hotel Listings on the Accused Instrumentality, which were stored on a user database. Such user database was stored in memory available through the Accused Instrumentality, for example as discussed above. The user attributes of users (hotels) who create Hotel Listing, contained on the

user database, included, *e.g.,* Hotel Amenities, Hotel Categories, Brands, as well as other specifications and the like as shown for example in the examples below.



(*E.g.,* https://web.archive.org/web/20200310103525/https://www.hyatt.com/en-US/explore-hotels/map).

27.     The Accused Instrumentality had an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* Hotel Listings with associated photo content and textual content) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server. As can be seen below, such electronic content filter as was used by the Accused Instrumentality was based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia*, Hotel Amenities, Hotel Categories, Brands,

and others) which in turn affected which electronic media submissions, *e.g.,* Hotel Listings and associated media, appeared to the user, as shown and discussed for example below.



(*E.g.,*    https://web.archive.org/web/20200310103525/https://www.hyatt.com/en-US/explore-hotels/map).

28.    The electronic content filter of the Accused Instrumentality was used by the Accused Instrumentality to develop multimedia content (*e.g.,* the profiles, Hotel Listings, and/or various content as discussed above) associated with the user (submitter) to be electronically available for viewing on user devices (*e.g.,* devices such as computers and smart phones incorporating browsers or apps) wherein the identification of the submitter (*e.g.,* a Host/offeror's name) was maintained with each selected and retrieved submission within the multimedia content, for example as shown below.





(*E.g.*,   https://web.archive.org/web/20200120155050/https://www.hyatt.com/promo/last-minute-weekend-getaways?icamp=hy_weekenddeals_january2020_hppromo_D_en_kauai_p681).




(*E.g.,*     https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

29.     The Accused Instrumentality had an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve multimedia profile and/or post content with associated photo, profile picture, and textual content to users, configured to make the multimedia content

electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with the Hotel Listing was provided on various user devices (*e.g.,* computers or other devices with a web browser or app) in response to a user logging in to the Accused Instrumentality. The Accused Instrumentality had function-specific subsystems that were used by Hyatt and its customers, for example as discussed below.





(*E.g.,*    https://web.archive.org/web/20200120155050/https://www.hyatt.com/promo/last-minute-weekend-getaways?icamp=hy_weekenddeals_january2020_hppromo_D_en_kauai_p681).

30.    The Accused Instrumentality had an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate (*e.g.,* by the user's choices with respect to a selection of one or more stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.,* a multimedia Hotel Listing provided by a submitter, with accompanying photo and/or textual content). The Accused Instrumentality had function-specific subsystems that were used by Hyatt and its customers, for example as discussed below.



(*E.g.,*   https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).

 

(*E.g.*,    https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

     31.    The Accused Instrumentality enabled the electronic media submission to include images and text data associated with the submission.



(*E.g.*,  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).

32.    The Accused Instrumentality enabled the electronic media submission to include
text data associated with the submission.



(*E.g.*, https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&

    33.    The Accused Instrumentality enabled the electronic filter to include criteria defined

by keywords.



(*E.g.*,   https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).

34.    Plaintiff was damaged as a result of Defendant's infringing conduct.  Defendant is
thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such
Defendant's infringement of the '480 Patent, *i.e.*, in an amount that by law cannot be less than
would constitute a reasonable royalty for the use of the patented technology, together with interest
and costs as fixed by this Court under 35 U.S.C. § 284.

35.    To the extent marking is required, VCA has complied with all marking
requirements.

### IV.  COUNT II
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,477,665)

36.    Plaintiff incorporates the above paragraphs herein by reference.

37.    On October 25, 2016, United States Patent No. 9,477,665 ("the '665 Patent") was
duly and legally issued by the United States Patent and Trademark Office.  The '665 Patent is titled
"Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."  A true

and correct copy of the '665 Patent is attached hereto as Exhibit B and incorporated herein by reference.

38.    VCA is the assignee of all right, title, and interest in the '665 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '665 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '665 Patent by Defendant.

39.    The application leading to the '665 patent was filed November 16, 2012, which was a continuation of application no. 11/978,781, which issued as United States Patent No. 8,340,994, which was a continuation of application no. 09/565,438 which issued as United States Patent No. 7,308,413.  (Ex. B at cover).  The '665 patent was first assigned to Virtual Creative Artists, LLC. (*Id.*).

40.    The '665 Patent shares the identical specification as the '480 patent and therefore VCA incorporates the background and discussion of the invention in Paragraphs 11-18. Furthermore claim 1 involves a system for generating multimedia content.  The claim requires, among other things, electronically generating a multimedia file from the retrieved electronic media Submissions in accordance with a selected digital format, wherein the identification of the submitter is maintained with each retrieved submission within the multimedia file.  The claim requires electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser and.  This allows electronically transmit data indicating votes or rating of multimedia content in a much quicker and easier fashion based on specific user criteria.  There is nothing abstract about this very particular, unconventional, and non-routine system for the

generation of multimedia content as specifically claimed and there is no risk of preempting creating and distribution contention generally, or even within the context of the Internet.

41.     The invention is a highly technical electronic process that cannot be achieved with the human mind and is instead rooted in computer technology, including the steps of:

- "electronically retrieving a plurality of electronic media submissions,"

- "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format,"

- "electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser," and

- "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content."

42.     Each of these subsystems are configured in a very specific (and not generic, unconventional and non-routine manner to offer the novel and non-obvious approach claimed invention.  For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased required in the claim.  In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

43.     The claim also provides details to explain how each step operates.  For example, the claim requires "electronically retrieving a plurality of electronic media submissions from an electronic media submissions database using an electronic content filter located on one or more

data processing apparatus." Further, "the electronic media submissions database" in this step is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." The step further requires and "electronic content filter." The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes."

44.     The claims also require an "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format." Manipulation of multimedia data in accordance with a selected digital format is far from generic and was not routine or conventional at the time of the invention. Further, this step requires that the "electronic media submissions database" "stores data identifying the submitter" and the "the identification of the submitter is maintained with each retrieved submission within the multimedia file."

45.     The claims also require "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content," which is a well-defined, specific, and unconventional feature. By including this additional voting/rating feature, the claims avoid any risk of preempting the creation and distribution of content.

46.     The claims also have inventive concepts. For example, the claim requires that the filtering tool be at a specific location, remote from the end-users, with customizable filtering features specific to each end user. The "electronic content filter" is located at the server, remote from the end user, and customizable based on user attributes. The "electron voting" step at the time of the invention was also novel, inventive, and added sufficient inventive contributions to avoid a risk of preempting the creation and distribution of media content. It is clearly possible to

create and distribute media content without every having to include a "voting" subsystem on what components should be included in such media content.

47.    These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '665 patent before the United States Patent and Trademark Office.

48.    **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1, 5, 16 of the '665 Patent in Texas, and elsewhere in the United States, through making, using, and offering for use its computer-based system that operated certain features at https://www.hyatt.com/ ("Accused Instrumentality").

49.    Hyatt made, used, and offered for use a computer-based system for its Accused Instrumentality that enabled Host Brands (Submitters) to share multimedia content pertaining to Hotel Listings. The Hotel Listings included multimedia content including image and textual content (*e.g.,* a Hotel Name, Hotel Description and images of the Hotel offered) which may be shown to other users based on, *inter alia*, user attributes. This system included one or more data processing apparatus, and a computer readable medium coupled to the one or more data processing apparatus having instructions stored thereon which, when executed by the one or more data processing apparatus, caused the one or more data processing apparatus to perform an electronic method comprising the functions as further discussed below. The system of the Accused Instrumentality, during the relevant time period, had multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, and employed separate server subsystems for all its meaningfully different functions. The system of the Accused Instrumentality could use, during the relevant time period, numerous different networks and providers for, inter alia, content management systems, web servers, web

hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.*, https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/ hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).



(*E.g.*, https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).



(*E.g.,* https://w3techs.com/sites/info/Hyatt.com).

50.    The Accused Instrumentality electronically retrieved a plurality of electronic media submissions from an electronic media submissions database on a non-transitory medium, for example multimedia content pertaining to building a personalized Host Profile on the Accused Instrumentality, as well as multimedia content pertaining to Hotel Listings (*e.g.,* image content and textual content for a short-term or long-term listing). The Accused Instrumentality allowed individual Host-users to sign up and create Hotel Listings on Hyatt's Accused Instrumentality, which Hotel Listings were stored on a user database. Such user database was stored in memory available through the Accused Instrumentality, for example as discussed above. The user attributes of users who created a Hotel Listing, which were stored on the user database, included, *e.g.,* Hotel

Amenities, Hotel Categories, Hotel Brands, as well as other specifications and the like as shown in the examples below. The Accused Instrumentality's retrieval of electronic media with associated photo content and textual content associated with the Hotel Listings from the electronic media submissions database used an electronic content filter located on the one or more data processing apparatus. As can be seen below, such electronic content filter as was used by the Accused Instrumentality was based at least in part on at least one of the one or more user attributes (*e.g.*, based on, *inter alia*, Hotel Amenities, Hotel Categories, Hotel Brands, and others), which in turn affected which electronic media submissions, *e.g.*, Hotel Listings and associated media, appeared to the user, as shown and discussed for example below. The Accused Instrumentality had function-specific subsystems that were used by Hyatt and its customers, for example as discussed below.



(*E.g.*, https://web.archive.org/web/20200310103525/https://www.hyatt.com/en-US/explore-hotels/map).

    51.    The Accused Instrumentality included an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions

database stored on a non-transitory medium in order to process and store received submissions from a plurality of Hosts (submitters), for example content pertaining to their respective electronic media submission (*e.g.,* Hotel Listing) on the Accused Instrumentality, as well as multimedia content to be displayed on one or both of the user's profile and the Hotel Listings, as discussed and shown for example in connection with the above discussion. The submissions pertaining to building a Brand profile and to posting a Hotel Listing included, *e.g.,* photo and/or textual content. On information and belief, the submissions were provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a content portal, accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* Hosts/users) over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.

52.     The electronic media submissions database of the Accused Instrumentality, which stored the submissions, further stored data identifying the submitter and data indicating content for each electronic media submission (*e.g.,* Hotel Listing). As shown below, data identifying the user (submitter) included, *e.g.,* a name. Data indicating content for each electronic media submission included photo and/or textual content.





(*E.g.*,  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).




(*E.g.,*   https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

53.     The Accused Instrumentality electronically generated multimedia files from the retrieved electronic media submissions, in accordance with a selected digital format (*e.g.,* a digital format compatible with a selected digital format compatible with the particular device, such as a computer or smart phone incorporating one or more browsers or apps), and the identification of

the submitter was maintained with each retrieved submission within the multimedia file. As shown

below, data identifying the user (submitter) included, *e.g.,* a name identifying the user.



(*E.g.,*     https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-
hyatt/id476639005).

54.     The Accused Instrumentality, in order to distribute its multimedia file to a

geographically distributed userbase, electronically transmitted the multimedia file to a plurality of

publicly accessible webservers, so as to make electronically available multimedia profiles and/or Hotel Listings, with associated photo and textual content, to various users among a geographically distributed userbase, thereby making the multimedia file electronically available for viewing via a web-browser on one or more user devices over a public network (*e.g.,* the Internet). The Accused Instrumentality had function-specific subsystems that were used by Hyatt and its customers, for example as discussed below.



(*E.g.,*  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/ hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).





(*E.g.*, https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

55.    The Accused Instrumentality had a web-based graphical user interface enabling its users to electronically access an electronic voting subsystem, enabling tracking of voting or electronic rating, configured to enable a user to electronically transmit data indicating a vote for

or rating of (*e.g.,* by the user's choices with respect to a selection of one or more Stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.,* a multimedia Hotel Listing provided by a submitter, with accompanying photo and/or textual content). The Accused Instrumentality had function-specific subsystems that were used by Hyatt and its customers, for example as discussed below.



(*E.g.,*  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/ hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).



(*E.g.,* https://web.archive.org/web/20200413113100/https://apps.apple.com/us/app/world-of-hyatt/id476639005).

56.    The Accused Instrumentality enabled the electronic media submission to include text data associated with the submission.



(*E.g.*,  https://web.archive.org/web/20200310111039/https://www.hyatt.com/en-US/hotel/florida/
hyatt-place-miami-airport-west-doral/miazd?icamp=hy_miazd_hpdestinationbubble_en_P034&).

57.    The Accused Instrumentality enabled the electronic content filter to include criteria
defined by keywords. As can be shown below, the user was able to conduct a text search outside
of predetermined criteria. The text search represented user-inputted keywords, which necessarily
narrowed the search to media submissions' text.



(*E.g.*,    https://web.archive.org/web/20200310103525/https://www.hyatt.com/en-US/explore-hotels/map).

58.    Plaintiff was damaged as a result of Defendant's infringing conduct.  Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '665 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.    To the extent marking is required, VCA complied with all marking requirements.

## V.   **JURY DEMAND**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.      Judgment that the asserted claims of United States Patent No. 9,501,480 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.      Judgment that the asserted claims of United States Patent No. 9,477,665 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.      Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d.      That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.      That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.


April 11, 2025                                        DIRECTION IP LAW

                                                     */s/ Steven G. Kalberg*
                                                     David R. Bennett (IL Bar No.: 6244214)
                                                     Steven G. Kalberg (IL Bar No.: 6336131)
                                                     (*Admitted to the U.S. Dist. Ct. for the E.D. Texas*)
                                                     P.O. Box 14184
                                                     Chicago, Illinois 60614-0184
                                                     Telephone: (312) 291-1667
                                                     dbennett@directionip.com
                                                     skalberg@directionip.com

                                                     *Attorney for Plaintiff*
                                                     *Virtual Creative Artists, LLC*